IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| ESTATE of SHAWN A. OLIVEIRA by CHERYL OLIVEIRA-COLE, Personal Representative, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:10-cv-06124-HO |
| v. | ) ) | ORDER |
| UNITED STATES of AMERICA, | ) ) | |
| Defendant. | ) | |

## INTRODUCTION

In a Second Amended and Redacted Complaint, Cheryl Oliveira-
Cole (plaintiff), as the personal representative of Shawn
Oliveira[1]'s (decedent) estate, brings wrongful death and medical
malpractice claims against the United States of America (USA)

---

[1]    Her late husband.

1 - ORDER

seeking a total of $20 million damages. [#20]. Plaintiff claims
that the USA through the Roseburg Veterans Affairs Medical Center
(RVAMC) negligently failed to diagnose and treat plaintiff's
decedent Shawn Oliveira, who as a result, died on May 25, 2008,
at age 37, of testicular cancer. *Id.*

Defendant USA now moves under Fed.R.Civ.P. 12(b)(1), to
dismiss plaintiff's claims arguing that this court lacks subject
matter jurisdiction because plaintiff's claim was filed outside
the applicable statute of limitations. [#29].

DISCUSSION

A.    Factual Background:

Decedent joined the United States Air Force in 1999. [#29-
p.3; #40-p.4]. Decedent first sought treatment for left
testicular pain in August 2000. *Id.* He was examined and treated
by an Air Force urologist for epididymitis and improved with
medication. *Id.* The pain returned three months later and
further diagnostic studies (all of which were negative),
including pelvic ultrasound, Magnetic Resonance Imaging (MRI) and
a blood test, were performed. [*Id.;* #30-Ex.4]. Decedent was
referred to the Air Force physical evaluation board (PEB) which
in July 2001, placed him on the temporary disability retirement
list. [#29-p.3; #40-p.4].

After returning to Corvallis, decedent in October 2001, re-
established care with Dr Neville who referred him to the Oregon

2 - ORDER

Health Sciences University (OHSU) pain clinic for treatment by Dr. Sibell of his on-going testicular pain, from February through September 2002. [#29-p.4; #30-Exs. 9,10; #40-p.5]. Dr. Sibell did not find any abnormalities on examination and encouraged decedent to follow-up with mental health practitioners in RVAMC for his pain-related depression. *Id.*

Decedent began medical treatment with RVAMC in May 2002 and initially was seen and evaluated by Dr. Kirkendall, a psychologist and Elizabeth Davis, a mental health nurse practitioner. [#29-p.4; #40-p.5]. Over the next several months decedent's depression deepened and he was hospitalized and treated at RVAMC on September 10, 2002, until discharged on September 16, 2002. [#29-pp.4-5; #30- Exs. 1, 11, 12; #40-p.5]. Dr Turner treated him during this hospitalization, diagnosed decedent with factitious disorder and told decedent that his pain was "in his head." *Id.*

On December 2002, Dr. Hatfield, an Air Force urologist examined and evaluated decedent noted posterior tenderness in decedent's scrotum and testes; discussed possible remedies for decedent's continuing pain and diagnosed chronic bilateral orchalgia with normal genitourinary (GU) exam. [#29-p.5; #30-Ex. 16-p.3; #40-p.5]. Dr. Hatfield discussed aggressive surgical treatment with decedent and both agreed not to "proceed down this course of treatment" at that time. [#30-Ex.16-p.4].

3 - ORDER

Later in December 2002, Dr. Clinger, a primary care provider at RVAMC, examined decedent and despite normal GU findings, referred him to Dr. Spinella, a urologist at RVAMC for evaluation of his on-going pain. [#29-p.5; #30- Ex.15; #40-p.6].  Dr. Clinger noted certain blood tests that he believed appropriate if a testicular ultrasound was done and a solid mass was found. [#40-Ex.5]

In January 2003, Dr. Spinella examined decedent, found no organic etiology of decedent's pain and opined it had a significant psychological component. [#29-p.5; #30-Ex.17; #40-p.6].  Decedent was to be seen in the urology clinic as needed. *Id.*  Decedent saw and was re-examined by Dr. Clinger in October, 2003, who noted no significant physical findings.  [#29-pp.5-6; #30-Ex.18; #40-pp.6-7].

In January 2007, decedent experienced severe pain and right testicular swelling which was not relieved by anti-inflammatories prescribed by a local physician. #29-p.6; #40-p.7].  Decedent presented at the RVAMC emergency room in February 23, 2007, complaining of right testicular pain and swelling, severe back pain and weight loss of about 15 pounds.  [#29-p.6; #30-Ex.19 and Ex.23-p.2; #40-p.7].  A scrotal ultrasound was performed and revealed an intratesticular abnormality.  [#29-p.6; #30-Ex.20,p.2; #40-p.7].

Decedent was referred to Dr. Skogland, a RVAMC urologist who

4 - ORDER

evaluated him on March[2] 12, 2007, ordered blood tests and suspicious of cancer, referred him to Dr. Spinella for a possible radical right orchiectomy. [#30-Ex.20]. Dr. Skogland reassured decedent that "this [operation] would not interfere with his sexual or reproductive ability." [#30-Ex.20,p.2]. On March 29, 2007, Dr. Spinella evaluated decedent, recommended surgery and explained that the pathology findings would indicate whether he needed chemotherapy post-operatively. [#29-p.6; #30-Ex.21; #40-p.8].

On April 2, 2007, Dr. Spinella performed a right radical orchiectomy on decedent, ordered a thoracic and abdominal CT scan and referred him to Dr. Moore at the Portland VAMC (PVAMC) for an oncology consultation because the CT scans showed that the cancer had spread to his lungs and possibly his lymph nodes. *Id.* Dr. Moore at the PVAMC evaluated decedent on April 9, 2007, noted that despite a post-operative infection which was being treated with oral antibiotics, decedent had "generally recovered well from surgery," and began chemotherapy. [#30-Ex. 23,p.3]. Dr. Moore informed decedent and plaintiff that despite his aggressive cancer and its spread, "he [was] still expected to have an excellent outcome . . . [with] about a 50% chance that he will retain his fertility." [#30-Ex.23,p.5].

---

[2]     By March of 2007, decedent had developed nipple tenderness and gynocomastia along with a persistent dry cough. [#3-Ex.23-p.2].

5 - ORDER

Decedent's tumor markers normalized post-chemotherapy and his September 21, 2007, retroperitoneal lymph dissection was negative for any cancer or metastasis. [#40-p.8, Ex 39, p.1]. Decedent's treating physicians explained that these findings meant he had a good prognosis for a cure. [#40-p.8, Ex.37,p.2 and Ex.39, p.1].

However, in January 2008, decedent presented with spinal and brain metastasis. [#29-p.7; #40-p.10, Ex.37-p.3]. He deteriorated rapidly becoming paraplegic, incontinent and developing seizures. Dr. Moore for the first time, explained that his prognosis was grave and he would likely live no more than a few months. [#40-p.10, Ex.37-p.3]. Mr. Oliveira died on May 25, 2008.

Plaintiff filed an administrative tort claim with the Dept of Veterans Affairs (VA) on November 9, 2009. [#20-p.3; #29-p.7]. The instant action was filed in this court on May 21, 2010, because the VA had not issued a final disposition on the administrative tort claim within six months. [#20-p.2; #29-p.8].

B.    Standard of Review:

A motion to dismiss under Fed.R.Civ,P.12(b)(1) addresses the court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction rests upon the party

6 - ORDER

asserting jurisdiction. *Id.*

When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

C.   Jurisdiction:

The United States (USA) can only be sued to the extent it waives its sovereign immunity and consents to be sued. *United States v. Dalm*, 494 U.S. 596, 608(1990). Filing an administrative claim with the appropriate federal agency is a jurisdictional prerequisite to bringing a tort claim suit in federal court against the USA. 28 U.S.C. § 2675(a); *Jerves v. U.S.,* 966 F.2d 517, 518-19 (9th Cir.1992).

Once the administrative claim has been filed, the federal agency has six months within which to act. 28 U.S.C. § 2675(a). A civil suit can be filed under the Federal Tort Claims Act (FTCA), only after the agency either denies the claim in writing or as in this instance, fails to make a final disposition of the claim within six months after it is filed. *Id.*

Under the FTCA, a tort claim is barred unless the claimant notifies the appropriate Federal agency within two years after the claim accrues. 28 U.S.C. §§ 2401(b), 2675(a). This

7 - ORDER

limitation is a threshold jurisdictional requirement. *Burns v. United States,* 764 F.2d 722, 724 (9th Cir.1985).

It is well settled that in the medical malpractice context, a claim generally accrues when the plaintiff becomes aware of both the injury sustained and its cause. *United States v. Kubrick*, 444 U.S. 111, 119-22, (1979); see also *Davis v. United States,* 642 F.2d 328, 331 (9th Cir.1981). If a plaintiff fails to comply with the requirements of § 2401(b), the district court lacks jurisdiction over the FTCA action. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983).

The statute of limitations inquiry becomes more complicated when, as here, the plaintiff brings a failure to diagnose claim. *McGraw v. US,* 281 F.3d 997, 1001 (9th Cir.2002). In those instances, it is often very difficult for a plaintiff to determine the genesis of an injury resulting from a doctor's omissions. *Id.* While injuries directly inflicted by alleged malpractice, such as an operation on the wrong limb are often readily identifiable, a failure to identify and treat a latent condition is more elusive and may not become manifest to the patient until years later at the onset of a serious malady. *Augustine*, 704 F.2d at 1078.

8 – ORDER

The Ninth Circuit noting that the rule cannot be applied
mechanistically, held:

> "Where a claim of medical malpractice is based on the
> failure to diagnose or treat a pre-existing condition, the injury
> is not the mere undetected existence of the medical problem at
> the time the physician failed to diagnose or treat the patient or
> the mere continuance of that same undiagnosed problem in
> substantially the same state. *Rather, the injury is the*
> *development of the problem into a more serious condition which*
> *poses greater danger to the patient or which requires more*
> *extensive treatment.* In this type of case, it is only when the
> patient becomes aware or through the exercise of reasonable
> diligence should have become aware of the development of a
> pre-existing problem into a more serious condition that his cause
> of action can be said to have accrued for purposes of section
> 2401(b)."

*Augustine,* 704 F.2d at 1078(emphasis added).

Defendant argues that the FTCA two-year rather than the
Oregon wrongful death[3] three-year statute of limitations applies
which means that plaintiff's claim accrues at the time plaintiff
"was aware of Mr. Oliveira's injury and its cause."  [#29-pp.10-

---

[3]    Oregon requires wrongful death actions to be brought
within three years from the date the injury causing death is
discovered or reasonably should have been discovered. Or.Rev.Stat.
§ 30.020(1). However ORS 30.020(1)(b) also states "The longest of
any other period for commencing an action under a statute of
ultimate repose that applies to the act or omission causing the
injury, including but not limited to the statutes of ultimate
repose provided for in ORS 12.110(4) . . . ."
     The Oregon medical malpractice statute of ultimate repose,
Or.Rev.Stat. § 12.110(4), provides: "An action to recover damages
for injuries to the person arising from any medical ... treatment,
omission or operation shall be commenced within two years from the
date when the injury is first discovered or in the exercise of
reasonable    care    should    have    been    discovered.    However,
notwithstanding the provisions of ORS 12.160 [the disability
tolling statute], every [malpractice action] shall be commenced
within five years from the date of treatment, omission or operation
upon which the action is based

9 - ORDER

13]. Defendant asserts that plaintiff's claim therefore accrued on April 9, 2007, when plaintiff knew that decedent's cancer had spread to his lungs and would require chemotherapy. *Id.* Defendant concludes that this court therefore lacks subject matter jurisdiction because plaintiff's claim was untimely filed on November 9, 2009, seven months late. [#29-pp. 13-15].

Plaintiff responds that the earliest date upon which the cause of action accrued is January 2008, when decedent experienced a rare and unexpected worsening of his condition and *for the first time, plaintiff and her husband became aware of the seriousness of his condition.* [#40-p.17, Ex. 37]. Plaintiff's contends her claim is therefore timely filed under the FTCA, because it was filed on November 2009, one year and ten months later. *Id.*

I agree. Although plaintiff and decedent knew in April 2007, that decedent had a testicular cancer that had spread to his lungs, his tumor markers normalized after chemotherapy, his retroperitoneal lymph node dissection was clear and his treating physicians were optimistic that he would achieve a complete remission. To find that this cause of action accrued before decedent's condition unexpectedly worsened in January 2008, would require plaintiff to have greater knowledge than both Dr. Moore, decedent's treating oncologist and Dr. Daneshmand, his oncologic surgeon. For example, Dr. Moore, his treating VA oncologist,

10 - ORDER

testified that the decedent's worsening condition was "not anticipated and the discovery that he was going from a situation where we thought he was potentially cured to terminally ill was a definitely disappointing turn of events . . . ." [#53-Ex.1-p.22].

CONCLUSION

Based on the foregoing, defendants' Motion to Dismiss [#28], is DENIED.

IT IS SO ORDERED

DATED this _____ day of October, 2012.

UNITED STATES DISTRICT JUDGE

11 - ORDER